ATTORNEY FOR APPELLANT
Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Tyler G. Banks
Andrew A. Kobe
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Aug 29 2016, 10:30 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 24S05-1606-CR-358

MICHAEL DAY,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Franklin Circuit Court 2, No. 24C02-1501-CM-70
The Honorable Clay M. Kellerman, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 24A05-1506-CR-724

**August 29, 2016**

**Rush, Chief Justice.**

As Michael Day's marriage dissolved, the family home became increasingly tense, until one night Day came home, screamed in his wife's face, and spat in her eye. Four 911 calls later, Day was arrested. He was subsequently convicted of disorderly conduct based on "fighting." Here, he asks us to interpret the disorderly conduct statute's "fighting" subsection to require both a public disturbance and a physical altercation, claiming the State failed to prove either element.

Guided by well-established principles of statutory interpretation, we conclude that the "fighting" subsection does not contain a public disturbance element but does require a physical

altercation. Still, Day's intentional spitting provided sufficient evidence of a physical altercation. We thus affirm his disorderly conduct conviction.

**Facts and Procedural History**

Defendant Michael Day and his wife, M.D., were on the brink of divorce. While continuing to share their marital home, they often engaged in fiery arguments. Regrettably, these verbal battles were often within their two young sons' earshot. The arguments increasingly turned to one subject—what to do with their home. Day wanted to sell it immediately, but M.D. wanted to speak with a lawyer first.

One evening, that argument flared up again. While M.D. was driving their younger son home from the movies, Day called her and said, "You f***ing b****. I ought to kill you." M.D. immediately hung up. Upon returning home, she went to bed and locked the door, fearing what Day might do.

About a half hour later, M.D. awoke to Day shouting in the living room. He opened the bedroom door and screamed, "You f***ing b****. You will sign these papers for the house." M.D. pleaded with Day to leave her alone, but he refused. Instead, he walked up to the bed where she was lying, leaned over, and deliberately spat on her face. M.D. had to wipe the spit away as it ran into her eye.

When Day finally left the bedroom, M.D. called 911 out of fear for herself and the children. But she quickly hung up because Day stormed back in, screaming. The 911 operator called back and dispatched officers after she heard Day's screaming and M.D. agreed that she needed help.

After two more 911 calls, the police arrived. As the officers walked up to the house, they heard Day's continued screaming. Looking through the glass front door, they saw Day cornering M.D. with his finger pointed in her face. Even as the officers entered, Day continued his diatribe.

The State charged Day with B-misdemeanor disorderly conduct, alleging he knowingly or intentionally engaged in "fighting and/or tumultuous conduct with [M.D.]" After a bench trial, the court found Day guilty and sentenced him to six months, suspended to probation. Day appealed, arguing that the disorderly conduct statute requires both a public disturbance and a physical

altercation and that the State failed to prove those elements.

The Court of Appeals affirmed in a split decision. Day v. State, 48 N.E.3d 921 (Ind. Ct. App. 2016). The majority held the "fighting" subsection required neither a public disturbance nor a physical altercation, and sufficient evidence supported the conviction. Id. at 924–27. Judge Baker dissented, contending that the disorderly conduct statute does not prohibit private, verbal altercations. Id. at 927–28 (Baker, J., dissenting).

Day sought transfer, which we granted, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

This case involves two distinct standards of review. We first address whether the "fighting" subsection of the disorderly conduct statute includes certain elements. Because this presents a matter of statutory interpretation, it receives de novo review. Jackson v. State, 50 N.E.3d 767, 770 (Ind. 2016). We then determine whether sufficient evidence supports Day's conviction under the statute as interpreted. See Buelna v. State, 20 N.E.3d 137, 141 (Ind. 2014). We consider only the probative evidence and reasonable inferences supporting the verdict, without reweighing evidence or reassessing witness credibility. Id. And unless no reasonable factfinder could conclude the State proved Day guilty beyond a reasonable doubt, we affirm. Id.

## Discussion and Decision

Indiana's disorderly conduct statute prohibits certain types of behaviors. Specifically, the statute provides, "A person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons; commits disorderly conduct, a Class B misdemeanor." Ind. Code § 35-45-1-3(a) (2014).

Day argues that the "fighting" subsection is ambiguous on two points: whether it includes public *and private* disturbances and whether it includes physical *and verbal* altercations. He asks that we interpret the subsection narrowly—covering only public disturbances and physical altercations. In response, the State argues that the "fighting" subsection unambiguously extends to both private and verbal altercations.

We agree with both arguments in part and hold that although the "fighting" subsection does not require a public disturbance, it does require a physical altercation—and that Day's spitting provided sufficient evidence of that element.

## I. Indiana's Disorderly Conduct Statute's "Fighting" Subsection Does Not Contain a Public Disturbance Element.

Day contends that the statute's "fighting" subsection requires a public disturbance. The State responds that the General Assembly chose not to include a public element, and this Court should decline to engraft one. We agree with the State.

When interpreting a statute, our primary goal is to fulfill the legislature's intent. Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012). And the "best evidence" of that intent is the statute's language. Id. If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it "does say" and what it "does not say." State v. Dugan, 793 N.E.2d 1034, 1036 (Ind. 2003).

Here, the "fighting" subsection "does not say" that the State must prove public disturbance. Instead, it simply reads, "A person who recklessly, knowingly, or intentionally . . . engages in fighting or in tumultuous conduct . . . commits disorderly conduct." I.C. § 35-45-1-3(a). Certainly, our legislature could have included a public element, just as it did for other crimes, such as public intoxication, public indecency, and public nudity. Ind. Code § 7.1-5-1-3 (2010); Ind. Code §§ 35-45-4-1, -1.5 (2014). Yet in crafting the "fighting" subsection, our legislature decided otherwise.

We could end our discussion here with that straightforward observation: the legislature did not include a public disturbance element. See Jackson, 50 N.E.3d at 773. But we note two additional indications that the omission was intentional—a public element explicitly appeared both in past versions of the disorderly conduct statute and also in the Model Penal Code ("MPC") version, from which the legislature adapted Indiana's statute.

From 1943 to 1976, Indiana's disorderly conduct statute prohibited acting in a "disorderly manner *so as to disturb the peace and quiet of any neighborhood or family*." See, e.g., Ind. Code § 10-1510 (Burns 1943) (emphasis added). In 1976, however, the General Assembly discarded that public requirement. I.C. § 35-45-1-3 (Supp. 1977). And that 1976 version remains almost entirely intact today—still devoid of a public disturbance element. Compare id., with I.C. § 35-45-1-3 (2014).

Further, the General Assembly patterned much of the 1976 statute on the MPC version—except for the MPC's public element language. See Whittington v. State, 669 N.E.2d 1363, 1367 (Ind. 1996). Specifically, the MPC version prohibits engaging in fighting "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Model Penal Code § 250.2(1) (1980) (containing text of MPC as adopted in 1962). Our legislature could have readily adopted the MPC's public element, but omitted it instead. We conclude that rejection was intentional, not accidental.

In sum, the disorderly conduct statute unambiguously applies to both public *and private* disturbances. Day is not immune from prosecution simply because he confined his "fighting" to his house. We turn now to Day's second claim—that "fighting" is ambiguous as to whether it covers both physical *and verbal* altercations.

## II. Although "Fighting" Covers Only Physical Altercations, Day's Spitting Satisfies That Element.

Day argues that the term "fighting" is ambiguous because it can be interpreted in two reasonable ways—it might include both physical *and verbal* altercations or it might include *only physical* altercations. He then invokes the rule of lenity, asking us to adopt the narrower interpretation, covering *only physical* altercations. The State responds that "fighting" is not ambiguous, but simply broad—including both types of altercations. We agree with Day that "fighting" allows two reasonable interpretations, and we adopt the narrower one—that "fighting" covers only physical altercations. But even so, Day's spitting provides sufficient evidence to support his conviction.

Under well-established principles of statutory interpretation, a statute is ambiguous when it allows more than one reasonable interpretation. Adams, 960 N.E.2d at 798. If, for example, judicial opinions or dictionaries define a term inconsistently, that inconsistency provides evidence of ambiguity. In re Howell, 27 N.E.3d 723, 726 (Ind. 2015) (differing judicial opinions); Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 534 (Ind. 2006) (differing dictionary entries). And if we conclude a statute is ambiguous, then we resort to the rules of statutory interpretation to fulfill the legislature's intent. Suggs v. State, 51 N.E.3d 1190, 1194 (Ind. 2016). In criminal cases, this includes the rule of lenity—interpreting the statute in the defendant's favor as far as the language can reasonably support. Meredith v. State, 906 N.E.2d 867, 872 (Ind. 2009) (noting that even under

5

the rule of lenity, "statutes 'are not to be overly narrowed so as to exclude cases they fairly cover'" (quoting Cape v. State, 272 Ind. 609, 613, 400 N.E.2d 161, 164 (1980))).

Here, "fighting" is ambiguous because it can reasonably cover either interpretation Day offers: narrowly covering *only physical* altercations or broadly covering both physical *and verbal* altercations. As evidence of that ambiguity, we note inconsistent definitions among judicial opinions and even among editions of Black's Law Dictionary.

State appellate courts disagree about the meaning of "fighting." For example, Connecticut and Oregon interpret "fighting" narrowly—covering only altercations involving "physical force" and "physical acts of aggression," respectively. State v. Indrisano, 640 A.2d 986, 995 (Conn. 1994); State v. Cantwell, 676 P.2d 353, 356 (Or. Ct. App. 1984). However, our Court of Appeals interprets the word much more broadly—covering a "[h]ostile encounter; either physical *or verbal* in nature." J.S. v. State, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006) (alteration in original) (emphasis added) (quoting Black's Law Dictionary 565 (5th ed. 1979)), trans. denied. This divergence among courts points to ambiguity.

Likewise, Black's Law Dictionary has defined "fight" inconsistently. Although early editions of Black's Law defined the word narrowly, later editions defined it broadly. For example, the Second and Third Editions, published in 1910 and 1933, respectively, defined "fight" narrowly in terms of a solely physical altercation: "An encounter, with blows or other personal violence, between two persons." Black's Law Dictionary 497 (2d ed. 1910); Black's Law Dictionary 777 (3d ed. 1933). But, the Fifth and Sixth Editions broadened the definition to cover verbal altercations as well. The Fifth Edition, published in 1979, defined "fight" expansively as a "[h]ostile encounter; either physical or verbal in nature." Black's Law Dictionary 565 (5th ed. 1979). Similarly, the Sixth Edition, published in 1990, defined "fight" as a "hostile encounter, affray, or altercation; a physical or verbal struggle for victory." Black's Law Dictionary 627 (6th ed. 1990). Both of these editions, however, are now outdated—Black's Law no longer defines the term "fight" or any variation. See Black's Law Dictionary (10th ed. 2014).

Because "fighting" ambiguously permits two interpretations—one narrow and the other broad—we consult rules of statutory construction to resolve the ambiguity. In particular, we consider two rules, *noscitur a sociis* and the rule of lenity. Both counsel in favor of interpreting "fighting" narrowly to cover only physical altercations.

6

First, under *noscitur a sociis*,[1] if a statute contains a list, each word in that list "should be understood in the same general sense." State v. D.M.Z., 674 N.E.2d 585, 588 (Ind. Ct. App. 1996), trans. denied; see also Dole v. United Steelworkers, 494 U.S. 26, 36 (1990). Here, subsection (a)(1) lists two items: "fighting" and "tumultuous conduct." And since "tumultuous conduct" is defined as "serious bodily injury to a person or substantial damage to property," I.C. § 35-45-1-1— "fighting" should be understood to entail physical violence as well.

Second, under the rule of lenity, we interpret ambiguous criminal statutes narrowly in the defendant's favor. Meredith, 906 N.E.2d at 872. That rule is grounded in two principles: criminal statutes should give fair warning about what conduct they prohibit; and legislatures, not courts, should decide what conduct is criminal. Healthscript, Inc. v. State, 770 N.E.2d 810, 816 (Ind. 2002). We find these principles especially compelling here, where interpreting "fighting" to include verbal altercations would apply much too broadly. Indeed, verbal altercations are commonplace. On any street, couples argue, relatives argue, and friends argue. Judicially stretching the word "fighting" to cover those arguments would deprive Hoosiers of fair notice and impinge upon our legislature's power to define the law. Thus, applying the rule of lenity, we adopt the narrower interpretation of "fighting," covering *only physical* altercations.

But even under our narrow interpretation of "fighting," Day's intentional, point-blank spitting on M.D. constitutes sufficient evidence to support his conviction. After Day berated M.D. for ten minutes, he leaned over the bed where she was lying and deliberately spat in her face. Some of the spit entered her eye, forcing her to wipe it away. A reasonable factfinder certainly could have found Day's conduct constituted a physical altercation.

## Conclusion

Given its plain language, we conclude that the disorderly conduct statute's "fighting" subsection contains no public disturbance element. And even though we interpret the ambiguous word "fighting" narrowly to cover only physical altercations, Day's spitting satisfied that element. We thus affirm Day's conviction for B-misdemeanor disorderly conduct.

Rucker, David, Massa, and Slaughter, JJ., concur.

---

[1] This Latin term is often translated as "it is known by its associates." Black's Law Dictionary 1224 (10th ed. 2014).