

FILED

Oct 24 2017, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Kenneth J. Falk
Jan P. Mensz
ACLU of Indiana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
BOONE COUNTY PROSECUTOR

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana


ATTORNEY FOR APPELLEE
BOONE COUNTY SHERIFF

Robert V. Clutter
Taylor, Chadd, Minnette,
Schneider & Clutter, P.C.
Lebanon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Doe 1, *et al.*, <br><br> *Appellants/Cross–Appellees, Plaintiffs,* <br><br> v. <br><br> The Boone County Prosecutor, in his official capacity, *et al.*, <br><br> *Appellees/Cross-Appellants, Defendants.* | October 24, 2017 <br><br> Court of Appeals Case No. 06A01-1612-PL-2741 <br><br> Appeal from the Boone Superior Court <br><br> The Honorable Matthew C. Kincaid, Judge <br><br> Trial Court Cause No. 06D01-1605-PL-225 |

**Robb, Judge.**

# Case Summary and Issues

[1]   In July of 2015, the Sheriff of Boone County, Indiana, sent a letter to his county's registered sex offenders informing them of the passage of Indiana's "serious sex offender" law. This law prohibits "serious sex offenders" from entering "school property." Under the Boone County Sheriff and Prosecutor's (the "State") interpretation of the statute and the definition of "school property," "serious sex offenders" cannot attend church, without facing arrest and prosecution, if their church conducts Sunday school or has child care for children of the ages described in the statute.

[2]   John Doe 1, John Doe 2, and John Doe 3 (collectively, "Appellants") are residents of Boone County and are "serious sex offenders" pursuant to the statute. Desiring to attend church, Appellants filed a complaint for declaratory and injunctive relief alleging their churches are not "school property" within the meaning of the statute, and, if they are "school property," the statute violates Indiana's Religious Freedom Restoration Act ("RFRA") by placing a substantial burden on their exercise of religion. Following a hearing, the trial court denied Appellants' requested relief but for a declaration they may attend church when Sunday school or child care is not being actively conducted on the premises.

[3]   Appellants now appeal, raising three issues for our review: 1) whether the trial court erred in concluding the churches are "school property" at any time; 2) if the churches are "school property," whether the statute and the State's efforts to

enforce the statute violate RFRA; and 3) whether the trial court abused its discretion in denying Appellants' request for a permanent injunction. The State cross-appeals, arguing the trial court erred in concluding the churches are not "school property" when they are not actively conducting Sunday school or child care. Concluding the Appellants' churches are not "school property" within the meaning of the statute, we reverse and remand with instructions for the trial court to enter an order granting Appellants' motion for a permanent injunction.[1]

## Facts and Procedural History[2]

[4] In 2015, the Indiana General Assembly passed Indiana Code section 35-42-4-14. Subsection (a) of this statute classifies persons who are required to register as sex offenders and found to be a sexually violent predator or convicted of certain sexual criminal offenses as "serious sex offenders." Subsection (b) of this statute prohibits "serious sex offenders" from knowingly or intentionally entering "school property."

[5] "School property," as used in the serious sex offender statute, is defined by Indiana Code section 35-31.5-2-285. Relevant to the facts of this case, "school property" is defined as a "federal, state, local, or nonprofit program or service

---

[1] Because we conclude Appellants' churches are not "school property," we do not reach Appellants' RFRA argument.

[2] We held oral argument in this case on September 7, 2017, in Indianapolis, Indiana. We commend counsel for their excellent oral advocacy.

operated to serve, assist, or otherwise benefit children who are at least three (3) years of age and not yet enrolled in kindergarten . . . ." Ind. Code § 35-31.5-2-285(1)(D).

[6] In July of 2015, the Boone County Sheriff sent a letter to the county's registered sex offenders informing them of the recent passage of Indiana's "serious sex offender" law. Citing these two statutes, the letter provided if the offenders' churches have "programs that benefit children who are at least three (3) years of age and not yet enrolled in kindergarten, which most churches have childcare and/or Sunday school classes for children, then the offender is prohibited from entering those facilities." Appellants' Appendix, Volume 2 at 36. The letter also provided the offenders are permitted to attend church "[a]s long as the church has only regular services and has no Sunday school for the age group denoted in the new law." *Id.*

[7] John Doe 1 is a Boone County, Indiana, resident and a "serious sex offender" under Indiana law. John Doe 1 was convicted in another state of soliciting a minor through the use of a computer and is currently on probation, although he is not prohibited by the terms and conditions of his probation from attending church. He is an active member of his church which he attends multiple times each month. His church conducts Sunday school programming for children, including children who are at least three years old and who are not yet enrolled in kindergarten. At his church, Sunday school takes place in the time between the two traditional Sunday morning church services. His church also offers

programs during the week for children including pre-school, pre-kindergarten, and kindergarten programs.

[8] John Doe 2 is a Boone County resident and "serious sex offender" under Indiana law. John Doe 2 was convicted of child seduction and is not on probation or parole. He and his wife regularly attend their church. John Doe 2's church conducts Sunday school programming for children, including children who are at least three years old and who are not yet enrolled in kindergarten. At his church, Sunday school programming is offered during the church services. After receiving the letter from the Boone County Sheriff, John Doe 2 contacted the employee of the Boone County Sheriff's Department responsible for sex offender registration who informed him that under the law he may no longer attend his church and there were no churches in Boone County he could attend as they all offer Sunday school. *See id.* at 73.

[9] John Doe 3 is a Boone County resident and "serious sex offender" under Indiana law. John Doe 3 was convicted of child seduction and possession of child pornography. He is not on probation or parole, although even when he was on parole, he was approved to attend church. John Doe 3 formerly attended his church every Sunday and also attended a men's group on Monday evenings. John Doe 3's church conducts Sunday school programming for children, including children who are at least three years old and who are not yet enrolled in kindergarten. At his church, Sunday school is offered during each church service.

[10] On May 26, 2016, Appellants filed their complaint against the State seeking declaratory and injunctive relief and damages. The Appellants' complaint alleged the State misinterpreted Indiana Code section 35-42-4-14 and, in doing so, violated Indiana's RFRA.[3] On June 20, 2016, Appellants filed their motion for an injunction and the trial court set the matter for hearing on September 26, 2016. On August 12, 2016, Appellants filed an unopposed motion to dismiss their claim for damages. The parties filed their stipulation of facts on September 20, 2016.

[11] Following the hearing on September 26, 2016, the trial court issued its findings of fact and conclusions thereon denying relief to the Appellants. The trial court concluded the Appellants' churches are not at all times "school property" within the meaning of the statute. Rather, in the trial court's view, the churches are "school property" only when they hold programs for children who are at least three years old and not yet enrolled in kindergarten. If the Appellants

---

[3] Indiana's RFRA provides,

> (a) Except as provided in subsection (b), a governmental entity may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability.

> (b) A governmental entity may substantially burden a person's exercise of religion only if the governmental entity demonstrates that application of the burden to the person:

>> (1) is in furtherance of a compelling governmental interest; and

>> (2) is the least restrictive means of furthering that compelling governmental interest.

Ind. Code § 34-13-9-8.

attend church during the time "Sunday Schools, vacation bible schools and pre-schools" are being conducted, they may be prosecuted and arrested. *Id.* at 16. If a church does not hold such programming, or it is not held during a church service, their churches are not "school property" and Appellants are free to attend church without fear of arrest. Further, the trial court concluded the State's interpretation of the "serious sex offender" law did not violate Indiana's RFRA. The trial court concluded the Appellants failed to demonstrate a "substantial burden" on their exercise of religion and, even if they had, the State's infringement upon their religious exercise was in furtherance of a compelling governmental interest and was the least restrictive means of furthering that interest.

[12]     Appellants filed their motion to correct error on November 30, 2016. The trial court denied their motion on December 5, 2016. Appellants now appeal.

# Discussion and Decision

## I. Appellants' Churches are Not "School Property"

### A. Standard of Review

[13]     Ordinarily, we review a trial court's findings of fact for clear error and its legal conclusions de novo. Ind. Trial Rule 52(A). However, when a trial court's factual findings merely refer to stipulated facts and no other evidence is offered at the hearing or considered by the trial court, our review is de novo. *Dedelow v. Pucalik*, 801 N.E.2d 178, 183 (Ind. Ct. App. 2003).

[14] Further, whether Appellants' churches are "school property" under the statute is a question of statutory interpretation. The meaning of a statute is a question of law and is also subject to de novo review. *Adams v. State*, 960 N.E.2d 793, 797 (Ind. 2012).

## B. Indiana Code Sections 35-42-4-14 and 35-31.5-2-285

[15] Indiana's "serious sex offender" law provides as follows:

> (b) A serious sex offender who knowingly or intentionally enters school property commits unlawful entry by a serious sex offender, a Level 6 felony.

Ind. Code § 35-42-4-14(b). "School property" is subsequently defined as

> (1) A building or other structure owned or rented by:
>
> > (A) a school corporation;
> >
> > (B) an entity that is required to be licensed under IC 12-17.2 or IC 31-27;
> >
> > (C) a private school that is not supported and maintained by funds realized from the imposition of a tax on property, income, or sales; or
> >
> > (D) a federal, state, local, or nonprofit program or service operated to serve, assist, or otherwise benefit children who are at least three (3) years of age and not yet enrolled in kindergarten, including the following:
> >
> > > (i) A Head Start program under 42 U.S.C. 9831 et seq.
> > >
> > > (ii) A special education preschool program.

> (iii) A developmental child care program for
> preschool children.
>
> (2) The grounds adjacent to and owned or rented in common
> with a building or other structure in subdivision (1).

Ind. Code § 35-31.5-2-285.

The question before this court is whether Appellants' churches, which offer Sunday school and/or child care services for children in the relevant age group, meet the statutory definition of "school property." Appellants argue they do not fit within this definition because the "plain text of the statute and a common sense understanding of a 'school' speaks in terms of distinct educational entities . . . [and] does not become a school simply because it offers 'some program or service' oriented towards children." Brief of Appellants at 31. By contrast, the State argues a church offering Sunday school for children of the relevant age group falls squarely within the statute's definition and our legislature's intent; the State alleges a church operates without the goal of profiting and Sunday school is plainly operated "to serve . . . or otherwise benefit" children. Brief of Appellees/Cross-Appellants at 31. Further, at oral argument, the State argued that nurseries or babysitting services operated by the churches are "developmental child care program[s]" because children are learning to socialize. Ind. Code § 35-31.5-2-285(1)(D)(iii). The State further argued the only way Appellants can attend church is if no children are present at a church's service. We disagree with the broad interpretation of "school property" advocated by the State.

[17] The goal of statutory interpretation is to discern and further the intent of the legislature. *Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016). "[W]e do not presume that the [l]egislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (internal quotation omitted). In interpreting a statute, we consider the structure of the statute as a whole and "avoid interpretations that depend on selective reading of words that lead to irrational and disharmonizing results." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195-96 (Ind. 2016). The "best evidence" of the legislature's intent is the statute's language, and, if that language is clear and unambiguous, we simply apply the statute's plain and ordinary meaning, heeding both what it "does say" and what it "does not say." *Day*, 57 N.E.3d at 812 (citation omitted).

[18] In considering the structure of the statute and viewing it as a whole, we cannot say the legislature intended to prohibit Appellants or other "serious sex offenders" from entering church property if that church offers Sunday school or child care services for children in the relevant age group. The statute is expansive and defines "school property" as a "building or other structure" owned or rented by: 1) a school corporation, 2) an entity required to be licensed under Indiana Code articles 12-17.2 or 31-27, or 3) a private school. Ind. Code § 35-31.5-2-285(1)(A)-(C).[4] Entities required to be licensed under Indiana Code

---

[4] The State does not argue any of these subsections apply.

articles 12-17.2 or 31-27 include day cares, child care centers, child care homes, group homes, or foster homes. The statute further includes all grounds adjacent to and owned or rented in common with these properties. *See* Ind. Code § 35-31.5-2-285(2). Thus, what the statute "does say" in the first three subsections is that public or private schools and child caring institutions that are required to be licensed are "school property," and that "school property" extends to surrounding property if owned or rented in common with that property. *See Day*, 57 N.E.3d at 812. To state the obvious, a church is not a school nor is it a child caring institution that is required to be licensed regardless of whether it offers Sunday school or child care services to children who are at least three years old but not yet enrolled in kindergarten.[5]

[19] Turning to the provision at issue in this case, our legislature has also defined "school property" as a "federal, state, local, or nonprofit program or service operated to serve, assist, or otherwise benefit children who are at least three (3) years of age and not yet enrolled in kindergarten . . . ." Ind. Code § 35-31.5-2-285(1)(D). Without a doubt, subsection (1)(D) is broadly worded and it is possible to imagine numerous programs and services that may fall within this definition. However, subsection (1)(D) also contains a list of examples that qualify as "school property" under this subsection, including: 1) a Head Start

---

[5] Indiana Code section 12-7-2-28.8 defines a "child care ministry" as "child care operated by a church or religious ministry that is a religious organization exempt from federal income taxation . . . ." Child care ministries are not required to be licensed under Indiana Code article 12-17.2 if they comply with the requirements of Indiana Code chapter 12-17.2-6. *See* Ind. Code § 12-17.2-6-1.

program,[6] 2) a special education preschool program, and 3) a developmental child care program for preschool children. Ind. Code § 35-31.5-2-285(1)(D)(i)-(iii). These listed examples help to clarify and give meaning to the phrase "program[s] or service[s] operated to serve, assist, or otherwise benefit children . . . ." *Id*; *see also ESPN, Inc.*, 62 N.E.3d at 1198 (noting the listed examples of a "law enforcement agency" all contained the common element of being public agencies, not private ones[7]). A common element among these listed examples, as well as the statute as a whole, is the focus on places or entities traditionally thought of and known as "school." Churches and religious instruction are not schools, nor do they become so by use of the popular and common name of "Sunday school." Moreover, we note what the statute "does not say." *See Day*, 57 N.E.3d at 812. The statute does not say churches, Sunday school, or anything related to religious instruction for children is "school property." Certainly, if our legislature intended for churches offering Sunday school or other religious instruction to children to qualify as "school property," thereby prohibiting "serious sex offenders" from entering that property, it could have clearly sought to do so.

---

[6] Head Start is a federal educational program designed to prepare low-income children for school by enhancing their cognitive, social, and emotional development. *See* 42 U.S.C. § 9831. Head Start supports low-income children in the areas of language, literacy, mathematics, science, social and emotional functioning, physical skills, and creative arts. *Id.*

[7] In *ESPN, Inc.*, our supreme court utilized the rule of statutory construction known as *noscitur a sociis*, which means "it is known by its associates." *See ESPN, Inc.*, 62 N.E.3d at 1198 n.5; *see also Day*, 57 N.E.3d at 814 (noting under *noscitur a sociis*, when a statute contains a list, each word in that list "should be understood in the same general sense.").

[20] We further disagree with the State's argument that a church providing child care services such as babysitting or nurseries meets the statutory definition provided by Indiana Code section 35-31.5-2-285(1)(D). At oral argument, the State's position was that these services provided "socialization" development for children and, therefore, the services "otherwise benefit[ed] children" and/or fit within Indiana Code section 35-31.5-2-285(1)(D)(iii) as a developmental program for children. Ind. Code § 35-31.5-2-285(1)(D). However, the purpose of providing child care services during church is to provide relief to parents or other adults who wish to have their focus fully centered on the church service and not be disrupted during the service. Whatever "socialization" development children may receive from this service, it is simply not analogous to any of the listed examples and is not a developmental program as contemplated by the statute.[8]

[21] In sum, Appellants' churches are not "school property" and they do not become "school property" by virtue of conducting Sunday school or offering child care services for children who are three years old but not yet enrolled in kindergarten.

---

[8] Again, we note "school property" includes entities required to be licensed under Indiana Code articles 12-17.2 or 31-27. These entities include day cares, child care centers, child care homes, group homes, or foster homes. "Child care ministries," which are day cares operated by a church or religious ministry, fall under Indiana Code article 12-17.2, but are not required to be licensed if they comply with the requirements provided in Indiana Code chapter 12-17.2-6. *See* Ind. Code § 12-17.2-6-1. It is illogical to conclude our general assembly excluded child care ministries under Indiana Code section 35-31.5-2-285(1)(B), where it would have naturally fit, yet intended to include it in the more general Indiana Code section 35-31.5-2-285(1)(D).

# II. Unconstitutional As Applied

[22] Assuming, for the sake of argument, Appellants' churches are "school property," Appellants allege the statute's application to them on these facts is unconstitutional as applied. Even under an intermediate level of scrutiny, it is unlikely the State could prevail in this case. *See S.V. v. Estate of Bellamy*, 579 N.E.2d 144, 146 (Ind. Ct. App. 1991) (noting intermediate scrutiny requires the challenged law to further an important governmental interest by means that are substantially related to that interest). The law, as applied to Appellants, seeks to keep them from associating with or being near children at least three years old but not yet enrolled in kindergarten. Consequently, this statute keeps Appellants from attending their churches. However, the law is overly broad as to these three men. First, none of the Appellants are restricted from being around children in this age group, nor were they restricted from attending church pursuant to the terms and conditions of their probation or parole. Second, none of the crimes committed by Appellants would be prevented by this statute. John Doe 1 was convicted of solicitation of a minor through the use of a computer. And John Doe 2 and John Doe 3 were both convicted of child seduction, a crime that does not involve children of the age group identified by the statute.[9] In addition, two of the Appellants were no longer under the supervision or authority of the State by way of parole or probation during this litigation, and Appellants' counsel represented to this court at oral

---

[9] We note John Doe 3 was also convicted of possession of child pornography.

argument the third is off of or will likely be off of probation soon.  Finally, all three Appellants can and will likely come in contact with children in this age group either at a church without Sunday school or child care or elsewhere.  In sum, the statute does not further the interest it seeks to redress as applied to these three men.[10]

# III.  Permanent Injunction

[23]  Appellants also contend they are entitled to a permanent injunction to prohibit the State from arresting and prosecuting them for entering their churches.  The granting or denying of an injunction is within the discretion of the trial court, and our review is limited to the determination of whether the trial court clearly abused that discretion.  *City of Gary, Ind. v. Majestic Star Casino, LLC*, 905 N.E.2d 1076, 1082 (Ind. Ct. App. 2009), *trans. denied*.  A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or if it misinterprets the law.  *Id.*

[24]  Generally, the trial court considers four factors when determining whether to grant permanent injunctive relief:

> (1) whether plaintiff[s'] remedies at law are inadequate; (2) whether the plaintiffs [have succeeded on the merits]; (3) whether the threatened injury to the plaintiff[s] outweighs the threatened

---

[10] We do not reach Appellants' RFRA argument, and as noted above, RFRA imposes a heightened level of scrutiny requiring the State to demonstrate a compelling governmental interest furthered by the least restrictive means. *See* Ind. Code § 34-13-9-8.  If the State's interpretation of the statute cannot pass intermediate scrutiny, it certainly could not pass a heightened level of scrutiny.

harm a grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief.

*Ferrell v. Dunescape Beach Club Condos.*, 751 N.E.2d 702, 712-13 (Ind. Ct. App. 2001). The party seeking the injunction carries the burden of demonstrating an irreparable injury; however, when the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of the hardships in his favor. *Id.* at 713. A permanent injunction is limited to prohibiting injurious interference with rights and must be narrowly tailored so that its scope is not more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted. *Id.*

[25] Appellants have succeeded on the merits in demonstrating their churches are not "school property" at any time within the meaning of the statute. Further, arrest and prosecution of Appellants for entering their church would constitute an unlawful act and Appellants therefore need not show irreparable harm or the balance of hardships weighs in their favor. *See id.* In concluding the public interest would not be served by the grant of an injunction, the trial court found the statute was necessary to keep "serious sex offenders" away from children. The trial court's conclusion was based on a misinterpretation of law and the public interest is not disserved by ensuring that Appellants, who are lawfully present in churches that conduct Sunday school and/or provide child care services, will not be unlawfully arrested and prosecuted. The trial court abused its discretion in denying Appellants' motion for a permanent injunction.

# Conclusion

We conclude Appellants' churches are not "school property" at any time within the meaning of Indiana Code section 35-31.5-2-285(1)(D) and the trial court abused its discretion in denying Appellants' motion for a permanent injunction. Accordingly, we reverse the trial court's order denying Appellants relief and remand with instructions to enter a permanent injunction in favor of Appellants prohibiting the State from arresting and/or prosecuting them for entering their churches.

Reversed and remanded.

Vaidik, C.J., and Bailey, J., concur.