## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 08 2017, 9:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Raquet Vandenbosch & Steele
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Douglas Alan Wolff, | November 8, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 27A05-1704-CR-853 |
| v. | Appeal from the Grant Superior Court |
| State of Indiana, | The Honorable Dana J. Kenworthy, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 27D02-1702-F6-94 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Douglas A. Wolff (Wolff), appeals the trial court's Order regarding the disposition of certain animals that were seized from Wolff's property and impounded in conjunction with charges of animal cruelty.

We affirm.

# ISSUE

Wolff raises one issue on appeal, which we restate as follows: Whether the trial court erred by granting authority to an animal shelter to determine the disposition of Wolff's impounded animals.

# FACTS AND PROCEDURAL HISTORY

In December of 2016, the Grant County Sheriff's Department and Marion Animal Care and Control responded to several complaints of animal neglect and cruelty, including a deceased horse, on Wolff's property located in Grant County, Indiana. As a result of the ensuing investigation, on February 23, 2017, the State filed an Information, charging Wolff with Count I, obstruction of justice, a Level 6 felony; Counts II and III, cruelty to an animal, Class A misdemeanors; and Counts IV and V, intimidation, Class A misdemeanors. That day, with authorization from the trial court, five horses, two mules, and two miniature donkeys were impounded from Wolff's property and were placed with the Animal Protection Coalition, Inc.'s Indiana Horse Rescue in Frankfort, Indiana. The trial court set bail in the amount of $20,000 cash, which Wolff paid to be released from jail.

On February 27, 2017, the State filed a notice with the court, establishing the costs of care associated with the nine impounded animals. The first month was estimated to cost $3,815, with subsequent months estimated at $3,015. Wolff never posted any bond intended for the care of the animals. On March 13, 2017, the State filed an Amended Motion to Determine Forfeiture/Disposition of Animals, requesting the trial court "to issue an order terminating [Wolff's] rights in the animals and grant ownership of all [nine] animals to the Indiana Horse Rescue for appropriate disposition." (Appellant's App. Vol. II, p. 30). In its motion, the State noted concerns raised by the animals' caretaker, specifically "difficulty in managing these animals" due to aggression because the horses had not been gelded. (Appellant's App. Vol. II, p. 30). The Indiana Horse Rescue desired to be granted possession of the animals in order to "have the stallions gelded immediately." (Appellant's App. Vol. II, p. 30). Alternatively, the State requested that if Wolff "seeks to have his posted bond money be apportioned to cover the cost of care for these animals," that the court "release the bond money according to the cost schedule previously filed." (Appellant's App. Vol. II, p. 30).

On March 20, 2017, the trial court conducted a hearing and, the same day, issued an Order on State's Amended Motion to Determine Forfeiture/Disposition of Animals. The trial court determined that "[t]here is probable cause to believe that [Wolff] has violated . . . [Indiana Code section 35-46-3-7—*i.e.*, cruelty to an animal]." (Appellant's App. Vol. II, p. 32). The trial court found that the animals had been "validly impounded," and Wolff

"has failed to take the necessary steps pursuant to [Indiana Code section] 35-46-3-6(c) to avoid disposition of the animals. [Wolff] has posted no bond for this purpose." (Appellant's App. Vol. II, p. 32). Accordingly, the trial court ordered that the Indiana Horse Rescue "is authorized . . . to determine disposition of all nine (9) animals impounded in this case." (Appellant's App. Vol. II, p. 33).[1]

[7] Wolff now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[8] Wolff's claims on appeal center on the application of Indiana Code section 35-46-3-6 regarding the impoundment of animals. To the extent that statutory interpretation is required, our review is *de novo*. *Day v. State*, 57 N.E.3d 809, 811 (Ind. 2016). On appeal, "our primary goal is to fulfill the legislature's intent." *Id.* at 812. The best evidence of legislative intent is the language of the statute itself. *Id.* "If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it 'does say' and what it 'does not say.'" *Id.* (quoting *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003)). If a statute allows for more than one reasonable interpretation, it is ambiguous,

---

[1] According to the chronological case summary, Wolff's jury trial was scheduled for October 3, 2017. The verdict is not part of the record.

and we must look to the well-established rules of statutory interpretation to fulfill the legislative intent. *Id.* at 813.

## II. *Disposition of Animals*

[9] The statute governing the present appeal provides as follows:

> * * * *
>
> (b) Any law enforcement officer or any other person having authority to impound animals who has probable cause to believe there has been a violation of this chapter . . . may take custody of the animal involved.
>
> (c) The owner of an animal that has been impounded under this section may prevent disposition of the animal by an animal shelter that is caring for the animal by posting, not later than ten (10) days after the animal has been impounded, a bond with the court in an amount sufficient to provide for the animal's care and keeping for at least thirty (30) days, beginning from the date the animal was impounded. The owner may renew a bond by posting a new bond, in an amount sufficient to provide for the animal's care and keeping for at least an additional thirty (30) days, not later than ten (10) days after the expiration of the period for which a previous bond was posted. If a bond expires and is not renewed, the animal shelter may determine disposition of the animal, subject to court order. If the owner of an animal impounded under this section is convicted of an offense under this chapter . . . , the owner shall reimburse the animal shelter for the expense of the animal's care and keeping. If the owner has paid a bond under this subsection, the animal shelter may euthanize an animal if a veterinarian determines that an animal is suffering extreme pain.
>
> (d) If the owner requests, the court having jurisdiction of criminal charges filed under this chapter . . . shall hold a hearing to determine whether probable cause exists to believe that a

violation of this chapter . . . has occurred. If the court determines that probable cause does not exist, the court shall order the animal returned to its owner, and the return of any bond posted by its owner.

(e) Whenever charges are filed under this chapter, the court shall appoint the state veterinarian under IC 15-17-4-1 or the state veterinarian's designee to:
    (1) investigate the condition of the animal and the circumstances relating to the animal's condition; and
    (2) make a recommendation to the court under subsection (f) regarding the confiscation of the animal.

(f) The state veterinarian or the state veterinarian's designee who is appointed under subsection (e) shall do the following:
    (1) Make a recommendation to the court concerning whether confiscation is necessary to protect the safety and well-being of the animal.
    (2) If confiscation is recommended under subdivision (1), recommend a manner for handling the confiscation and disposition of the animal that is in the best interests of the animal. The state veterinarian or the state veterinarian's designee who submits a recommendation under this subsection shall articulate to the court the reasons supporting the recommendation.

(g) The court:
    (1) shall give substantial weight to; and
    (2) may enter an order based upon;
a recommendation submitted under subsection (f).

(h) If a person is convicted of an offense under this chapter . . . , the court may impose the following additional penalties against the person:
    (1) A requirement that the person pay the costs of caring for an animal involved in the offenses that are incurred during a period of impoundment authorized under subsection (b).

(2) An order terminating or imposing conditions on the person's right to possession, title, custody, or care of:
    (A) an animal that was involved in the offense; or
    (B) any other animal in the custody or care of the person.

(i) If a person's right to possession, title, custody, or care of an animal is terminated under subsection (h), the court may:
    (1) award the animal to a humane society or other organization that has as its principal purpose the humane treatment of animals; or
    (2) order the disposition of the animal as recommended under subsection (f).

Ind. Code § 35-46-3-6.

## A. *Bond*

[10] Wolff first claims that the trial court erred in authorizing the Indiana Horse Rescue to determine the disposition of his animals because he paid $20,000 in bail. Indiana Code section 35-46-3-6(c) clearly states that the animal's owner "may prevent disposition of the animal" by, within ten days after impoundment, posting a bond "in an amount sufficient to provide for the animal's care and keeping for at least thirty (30) days." In this case, the State filed notice to establish that the care of the animals at the Indiana Horse Rescue would cost $3,815 for the first month and $3,015 per month thereafter.

[11] The trial court found that "[a]lthough [Wolff] has posted a bond to be released from the Grant County Jail, use of those bond funds for care of the animals is not a purpose authorized by the jail bond form signed by [Wolff], and [Wolff] has not requested that the jail bond be used for care of the animals."

(Appellant's App. Vol. II, p. 32).[2] In his appellate brief, Wolff seems to acknowledge that he posted the $20,000 to secure his release from jail but nevertheless insists that there is no reason why his bail payment could not be credited toward the monthly expenses bond required by Indiana Code section 35-46-3-6(c). As support, Wolff points out that, by statute, cash bonds may be used to pay restitution and expenses following a conviction.

[12] As the legislature has clearly set forth, the purpose of bail is to ensure that "a person who has been arrested for the commission of an offense" appears "at the appropriate legal proceeding"; it may also serve to ensure "another person's physical safety; or . . . the safety of the community." I.C. § 35-33-8-1. On the other hand, the stated purpose of posting a bond under Indiana Code section 35-46-3-6(c) is to provide for the care of impounded animals where there is probable cause to support charges of animal neglect or cruelty. Thus, we find that the legislature intended the bail and bond funds for separate and distinct purposes, and there is no basis for the trial court to automatically apply the money intended to secure Wolff's presence in court to the cost of providing for the impounded animals. Rather, it was incumbent upon Wolff to protect his rights regarding the disposition of the animals pending trial, and he failed to do so.

---

[2] A copy of the jail bond form signed by Wolff is not included in the appellate record.

[13] As to Wolff's claim that bail bonds are regularly used to pay for court fees and restitution, we note that Indiana Code section 35-33-8-3.2(a)(1) provides that "[i]f the court requires the defendant to deposit cash . . . , the court may require the defendant . . . to execute an agreement that allows the court to retain all or a part of the cash to pay publicly paid costs of representation and fines, costs, fees, and restitution that the court may order the defendant to pay if the defendant is convicted." In the present case, no agreement was ever executed permitting Wolff's bail money to be used for any purpose other than securing his appearance. Moreover, as the trial court noted, Wolff never requested that his bail money be applied to the animal care bond. Accordingly, we find no error in the trial court's determination that Wolff failed to comply with the requirement that he post a bond in order to prevent disposition of the impounded animals.

## B. *Appointment of State Veterinarian*

[14] Wolff also claims that the trial court violated Wolff's rights to due process by failing to adhere to Indiana Code section 35-46-3-6(e). This provision stipulates that, upon the filing of animal cruelty charges, the trial court "shall appoint the state veterinarian . . . to . . . (1) investigate the condition of the animal and the circumstances relating to the animal's condition; and (2) make a recommendation to the court . . . regarding the confiscation of the animal." I.C. § 35-46-3-6(e). *See also* I.C. § 35-46-3-6(f)-(g) (upon recommendation of confiscation, requiring the state veterinarian to recommend the manner for handling confiscation and disposition of the animals and requiring the trial

court to give substantial weight to the state veterinarian's recommendation). Pursuant to the Fourteenth Amendment of the United States Constitution, Wolff argues that he has been deprived of property without due process of law, and under Article I, Section 21 of the Indiana Constitution, he claims that his property has been taken without just compensation. Accordingly, based on the trial court's alleged non-compliance with the statute, Wolff insists that the Indiana Horse Rescue should not have been permitted to confiscate and determine the disposition of his animals.

[15] We first note that, at the time charges were filed against Wolff, the state veterinarian was already involved in the matter. In its Order, the trial court specifically stated that "Indiana State District 6 Field Veterinarian Melissa Justice, DVM, has been involved in investigating the condition of the animals, per Board of Animal Health Report filed as Exhibit 1 to the Affidavit of Probable Cause in this case." (Appellant's App. Vol. II, p. 33). Yet, Wolff insists that "the state veterinarian's report contradicted the affidavit used for probable cause" as the state veterinarian's report, which was completed prior to the filing of criminal charges, concluded that "[t]hree (3) of the [t]en (10) horses belonging to . . . Wolff are considered to be below the normal Body Condition Score for the Equine Species. Recommendations have been provided to the owner of continued management and care of the animals under his care and ownership." (Appellant's Br. p. 15; Appellant's App. Vol. III, p. 9). Thus, Wolff argues that the state veterinarian never recommended confiscation of the animals.

[16] A closer review of the state veterinarian report also indicates that while hay was available for the animals at the time of inspection, "the amount of grass present is minimal and is not considered to be a valuable source of nutrients at this time." (Appellant's App. Vol. III, p. 9). It was reported in the probable cause affidavit that concerned citizens/neighbors had been supplying the animals with the hay. Thus, it is entirely possible that, in ordering the confiscation and disposition of the animals, the trial court relied on the investigation of the state veterinarian in conjunction with the other evidence establishing probable cause. Nevertheless, notwithstanding whether the trial court properly appointed the state veterinarian and relied on her recommendations, we find no merit in Wolff's argument because he has failed to preserve any due process argument for appeal.

[17] In *Miller v. State*, 952 N.E.2d 292, 296 (Ind. Ct. App. 2011), a defendant challenged his convictions for animal neglect based on the fact that the state veterinarian had not conducted an investigation or made a recommendation regarding the confiscation of his animals as required by Indiana Code section 35-46-3-6(e)-(f). However, the defendant did not raise the issue until he filed a motion to vacate the verdict following the completion of his jury trial. *Id.* On appeal, our court noted that "[t]imely objection should be made to any improprieties that may occur during the course of a trial so that the trial judge may be informed and may take effective action to remedy the error or grievance complained of." *Id.* Objections that are not timely raised before the trial court are waived on appeal. *Id.* In *Miller*, we found that if the defendant had "raised

the issue[] when charges were filed, as contemplated by [Indiana Code section 35-46-3-6(e))], the trial court could have appointed the state veterinarian . . . to investigate, allowing the veterinarian to make a recommendation prior to the trial." *Id.*

[18] Here, based on the existence of probable cause of animal neglect or cruelty, officers properly took custody of the animals. Thereafter, Wolff failed to post a bond for their care to prevent disposition of the animals. Even though charges were filed, Wolff never challenged the trial court's appointment of, and reliance on, the state veterinarian. Although Wolff's jury trial had not been conducted at the time he filed this appeal, we find that he had ample opportunity to raise the matters of statutory non-compliance and lack of due process to the trial court prior to this appeal and should have done so. As a result, we decline to reverse the trial court's Order regarding the animals' disposition for failure to pay a bond.

# CONCLUSION

[19] Based on the foregoing, we conclude that the trial court properly authorized the Indiana Horse Rescue to determine the disposition of Wolff's impounded animals based on Wolff's failure to pay a bond for their care and keeping.

[20] Affirmed.

[21] Robb, J. and Pyle, J. concur