


**FILED**
Jun 03 2026, 8:55 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Nicholas S. Wemes,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 3, 2026

Court of Appeals Case No.
25A-CR-2491

Appeal from the Delaware Circuit Court

The Honorable Thomas A. Cannon Jr., Judge

Trial Court Cause No.
18C05-2401-F4-4

---

**Opinion by Judge Scheele**
Judges Bailey and Vaidik concur.

**Scheele, Judge.**

## Case Summary

[1] Nicholas S. Wemes was charged with Level 4 felony causing death when operating a vehicle with a schedule I or II controlled substance in the blood and Level 5 felony reckless homicide after toxicology testing of his blood returned positive for tetrahydrocannabinols (THC) and THC metabolites. Wemes filed a combined motion to suppress, motion in limine, and motion to dismiss, alleging the subsection under which he was charged with operating a vehicle with a schedule I or II controlled substance in his blood conflicts with other state statutes and federal law; the motions were denied.

[2] In this interlocutory appeal, Wemes asserts the trial court erred and raises the following two restated issues: 1) whether Indiana Code section 9-30-5-5(a)(2) requires proof of impairment and proof that blood THC content was derived from illegal marijuana, not from hemp; and 2) whether federal law preempts Indiana Code section 9-30-5-5(a)(2). We affirm.

## Facts and Procedural History

[3] On July 6, 2022, police and other emergency personnel responded to a traffic crash on Interstate 69 in Delaware County. Upon arrival, Indiana State Police (ISP) observed a break in the cable barrier between the north and southbound lanes, an overturned semi-truck in the southbound lanes, and a detached semi-trailer in the median. They located the driver of the semi-truck, Leslie Garrett,

in the truck's cab. Garrett was transported to a hospital where he died from his injuries that evening.

[4] A damaged Dodge Ram 3500 pulling a flatbed trailer was stopped on the shoulder of a northbound lane. ISP Master Trooper James Sparks made contact with Wemes, the driver of the Dodge Ram. After being advised of his *Miranda* rights, Wemes gave Trooper Sparks a voluntary statement about the crash. Wemes said he was traveling in the right northbound lane following Garrett's semi-truck. Wemes began switching lanes to pass the semi-truck when Garrett tapped his brakes. The front of Wemes' Dodge Ram struck the rear of Garrett's trailer, causing the trailer to "fishtail" and roll over into the southbound lanes. App. Vol. II p. 59. Wemes offered that he was following Garrett "a little too close . . . and . . . didn't either hit [his] brakes quick enough or didn't get over quick enough." *Id.* at 63-64.

[5] ISP officers noticed Wemes was distraught and shaken by the crash, but none of the officers reported any concerns for intoxication based on Wemes' demeanor. Nevertheless, because the crash involved serious injuries to Garrett, Wemes was offered a blood draw to which Wemes consented. On September 20, 2022, toxicology testing of Wemes' blood sample returned positive for "30 ± 4 ng/mL" of Delta-9 Carboxy THC (THC-COOH) and "2.1 ± 0.3 ng/mL" of Delta-9 THC. *Id.* at 118.

[6] On January 29, 2024, the State charged Wemes with Level 4 felony causing death when operating a vehicle with a schedule I or II controlled substance in

the blood and Level 5 felony reckless homicide.[1] In August 2024, Wemes learned the blood sample could not be re-tested because it had been destroyed on February 26, 2024, in accordance with the toxicology lab's policy.

On July 30, 2025, Wemes filed a combined motion to suppress, motion in limine, and motion to dismiss. Specifically, Wemes requested the court suppress the toxicology results, exclude the results and all testimony thereabout, or dismiss the charges against him. Following a hearing, the court issued a written order denying Wemes' motions. This interlocutory appeal ensued.

## Discussion and Decision

Initially, we note that Wemes does not particularly and concisely allege error in the court's rulings on any of his relevant motions. The court denied his motion to suppress, concluding there was no evidence that the challenged blood sample was collected illegally. It denied his motion in limine as "premature until testimony is offered as to the foundation" and determined Wemes' argument was "an evidentiary issue that would be appropriately ruled upon at trial[.]" *Id.* at 185. And as to the denial of his motion to dismiss, the court concluded Wemes' motion was untimely. Wemes does not articulate which of these rulings he challenges on appeal. However, in his conclusion, Wemes requests specific relief, asking that we "reverse the trial court and find that the toxicology

---

[1] Wemes does not challenge the impact of the trial court's ruling as to the reckless homicide charge. As reckless homicide does not require proof that a controlled substance was in one's blood, *see* Ind. Code § 35-42-1-5, the judgment on Wemes' motion and our holding do not impact the reckless homicide charge.

report and any testimony about Delta-9 THC being in [Wemes'] system . . .
should be suppressed[.]" Appellant's Br. p. 18. Therefore, to the extent that his
arguments may have been waived for lack of particularity, *see* Ind. Appellate
Rule 46(A)(4), we exercise our authority under Appellate Rule 1 to deviate
from the rules and review the court's denial of Wemes' motion to suppress.

## I. Indiana Code section 9-30-5-5(a)(2)

[9] Wemes argues that because hemp containing 0.3 percent of Delta-9 THC by dry
weight is "now legal[,] . . . any criminalization for having Delta-9 THC in one's
system without evidence that the substance derived from marijuana should be
prohibited." *Id.* at 9. He also asserts that if someone cannot be convicted of
"possession of marijuana" without proof that the substance contains more than
0.3 percent of Delta-9 THC, then "it is a natural conclusion that a person who
shows no signs of intoxication or impairment cannot be prosecuted under
[Indiana Code section] 9-30-5-5(a)(1)[2] when the State cannot prove the Delta-9
THC derived from marijuana as opposed to legal hemp." *Id.* at 13. Thus, he
seemingly asserts the trial court erred by not suppressing the evidence that THC
was in his blood at the time of the crash.

[10] Ordinarily, we review denial of a motion to suppress "deferentially, construing
conflicting evidence in the light most favorable to the ruling." *Lindquist v. State*,

---

[2] Section 9-30-5-5(a)(1) refers to a person who causes death or injury while operating a vehicle with a specified blood or breath alcohol concentration. Given the scope of Wemes' argument and that he was charged under section 9-30-5-5(a)(2), we presume his reference to subsection (a)(1) is a typographical error.

179 N.E.3d 1051, 1054 (Ind. Ct. App. 2021) (citation omitted). We review the trial court's factual findings for clear error, and we decline invitations to reweigh evidence or judge witness credibility. *Id.* Where, as here, the issue presents a matter of statutory interpretation, our review is de novo. *D.W. v. State*, 263 N.E.3d 151, 157 (Ind. 2025). "When interpreting a statute, our primary goal is to fulfill the legislature's intent." *Mi.D. v. State*, 57 N.E.3d 809, 812 (Ind. 2016). "[T]he best evidence of that intent is the statute's language." *Id.* (internal quotations omitted). "If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it 'does say' and what it 'does not say.'" *Id.* (quoting *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003)). We cannot add words or restrictions, and we consider "the structure of the statute in its entirety to promulgate a harmonious reading." *D.W.*, 263 N.E.3d at 157. "And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015).

[11] At the time of the crash, Indiana Code section 9-30-5-5 (2019) provided, in relevant part:

> (a) A person who causes the death or catastrophic injury of another person when operating a vehicle:
>
>> (1) with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>>
>>> (A) one hundred (100) milliliters of the person's blood; or

(B) two hundred ten (210) liters of the person's breath;

(2) with a controlled substance listed in schedule I or II of IC 35-48-2 or its metabolite in the person's blood; or

(3) while intoxicated;

commits a Level 4 felony.[3]

[12]     Indiana Code section 35-48-2-4(d) includes "marijuana" and "tetrahydrocannabinols" or "THC" as Schedule I controlled substances. Also at the relevant time, the definition of marijuana excluded, among other things, "hemp (as defined by IC 15-15-13-6)[.]" Ind. Code § 35-48-1-19 (2019).[4] And "hemp" means "the plant Cannabis sativa L. and any part of that plant . . . with a delta-9-tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis[.]" Ind. Code § 15-15-13-6 (2019).

[13]     Wemes reads more into the statute than what is there. The plain language of section 9-30-5-5(a)(2) penalizes driving resulting in death or catastrophic injury when a controlled schedule I substance or its metabolite is in one's blood, without further qualification. Whether certain amounts of marijuana or hemp with specific concentrations of THC can be legally possessed is irrelevant to the

---

[3] This statute was amended effective July 1, 2025, but the relevant subsections remain unchanged.

[4] Indiana Code chapter 35-48-1 was repealed effective July 1, 2025. The definition of "marijuana" is now codified at section 35-48-1.1-29, and still excludes "hemp (as defined by IC 15-15-13-6)[.]"

proscribed conduct. The statute does not contain any language distinguishing between legal or illegal hemp and THC concentrations or limiting the penalty based on the presence of a specific amount of THC or its metabolite. Subsection (a)(2) also does not require a showing of impairment or intoxication from the presence of THC or THC metabolites.

[14] Rather, section 9-30-5-5(a)(2) provides a flat ban on driving with any amount of controlled substance in the blood, unless prescribed.[5] And we have held that such a ban is permissible, whether the substance causes impairment or not, because

> unlike alcohol, there is no acceptable level of drug use that can be quantified so as to distinguish between users who [can] drive unimpaired and those who [are] presumptively impaired. Consequently, our legislature could have reasonably concluded that no level of schedule I or schedule II controlled substances can be acceptably combined with driving a vehicle. Thus, it is rational for the legislature to impose the flat ban with regard to controlled substances while not imposing the same ban with regard to alcohol.

*Bennett v. State*, 801 N.E.2d 170, 176 (Ind. Ct. App. 2003) (internal quotation omitted).

[15] Further, as the State aptly notes, section 9-30-5-5(a) does not distinguish culpability based on whether the type of alcohol consumed was legally or

---

[5] Section 9-30-5-5(d) creates a defense under subsection (a) if the accused driver can prove the controlled substance or its metabolite was in the person's blood in accordance with a valid prescription.

illegally sourced. Despite the definitions of marijuana and hemp, THC also remains a schedule I controlled substance regardless of the legality of the source. *See* I.C. §§ 15-15-13-6, 35-48-1-19, and 35-48-2-4(d). And, like alcohol, causing death when driving with THC in one's blood is criminalized whether the source of the THC was legal or illegal to possess or consume.

[16] The statutory language makes the legislature's intent clear. *See Mi.D.*, 57 N.E.3d at 812. But if any question of legislative intent remains, it is resolved by the legislative history materials. The definition of "hemp" under section 15-15-13-6 was enacted in 2014, where it was originally coined "industrial hemp[.]" *See* I.C. § 15-15-13-6 (2014). In the fiscal note accompanying the bill, the Legislative Services Agency noted a "conforming amendment" that "hemp is not considered to be marijuana for the purposes of Indiana criminal law." Legis. Servs. Agency, LS 6251, Fiscal Impact Statement, 118 Gen. Assembly, 2d Sess., at 2 (2014 IN S.B. 357) (quotation formatting altered). However, the agency specifically referenced *only one* impacted criminal statute, which was the "[p]ossession of marijuana" crime. *Id*. Thus, the legislature was clearly aware that introducing new definitions of marijuana and hemp could impact certain criminal laws and penalties. If the legislature intended these definitions to impact the penalty for causing death while driving with THC in one's blood, the legislature could have said so and proposed amendments to that statute; yet it did not.

[17] Still, Wemes argues that we should apply our holding in *Lakes v. State*, 224 N.E.3d 373 (Ind. Ct. App. 2024), and *Fedij v. State*, 186 N.E.3d 696 (Ind. Ct.

App. 2022), to this case. There we concluded that to prove a defendant possessed marijuana, the State must show the substance in question contained a THC concentration above 0.3 percent on a dry weight basis. *See Lakes*, 224 N.E.3d at 375; *Fedij*, 186 N.E.3d at 709. But those holdings are inapposite as neither case considered the type of criminal conduct present in the instant case. And we have already concluded the proscribed conduct under section 9-30-5-5(a)(2) is driving and causing death or injury with any amount or type of THC in one's blood. We decline Wemes' invitation to apply the *Lakes* and *Fedij* holdings here.

[18] To the extent that Wemes argues the trial court erred in denying his motion to suppress on the ground that the court misinterpreted the relevant statutes, we find no such error.

## II. Federal Preemption

[19] Wemes also contends "the legalization of Delta-9 THC under the Farm Bill means that a *per se* criminalization of having any Delta-9 THC in one's system under Ind. Code § 9-30-5-5(a)(2) is no longer proper unless the State can prove intoxication and/or impairment from marijuana[.]" Appellant's Br. p. 16. The crux of Wemes' argument is that the Indiana law prohibiting driving and causing death with THC in one's blood conflicts with and is, thus, preempted by federal law that "legalizes" hemp with a THC concentration at or below 0.3 percent. *Id.* at 15. The State correctly observes that there are three types of preemption—express, conflict, and field preemption—and each type of preemption has its own analytical framework. *See Murphy v. Nat'l Collegiate*

*Athletic Ass'n*, 584 U.S. 453, 477-80, 138 S.Ct. 1461 (2018). Thus, the State argues Wemes has waived this issue because he fails to provide the necessary authority and does not articulate under which framework he believes the state statute is preempted. In his reply brief, Wemes provides no clarification and simply asserts the State's preemption argument "cannot and does not refute that the State must prove the Delta-9 THC is from marijuana under federal law instead of hemp[.]" Appellant's Reply Br. p. 8. Because Wemes' argument lacks cogent reasoning and is unsupported by relevant authority, he has waived this issue for our review. Ind. Appellate Rule 46(A)(8)(a); *see also Stark v. State*, 204 N.E.3d 957, 963 (Ind. Ct. App. 2023) (appellate court will neither consider assertions without cogent reasoning supported by authority nor become an advocate for a party).

## Conclusion

[20] We affirm the trial court's denial of Wemes' motion to suppress.

[21] Affirmed.

Bailey, J., and Vaidik, J., concur.

ATTORNEY FOR APPELLANT

J. Bart McMahon
Louisville, Kentucky

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ian A. McLean
Supervising Deputy Attorney General
Indianapolis, Indiana