FILED

Aug 27 2019, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Gary L. Griner
Mishawaka, Indiana

ATTORNEY FOR APPELLEE

A. Robert Masters
Nemeth, Feeney, Masters & Campiti, P.C.
South Bend, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pinch-N-Post, LLC,<br>*Appellant/Petitioner,*<br><br>*v.*<br><br>Verna McIntosh,<br>*Appellee/Respondent.* | August 27, 2019<br><br>Court of Appeals Case No.<br>19A-TP-239<br><br>Appeal from the St. Joseph<br>Circuit Court<br><br>The Hon. John Broden, Judge<br><br>Trial Court Cause No.<br>71C01-1807-TP-233 |

**Bradford, Judge.**

# Case Summary

As of March of 2018, Verna McIntosh owned a South Bend house ("the Property") but had become delinquent on its property taxes. That month, Anthony Rose purchased a tax-sale certificate for the Property from St. Joseph County, which he assigned to Pinch-N-Post, LLC. Pinch-N-Post sent notice to McIntosh pursuant to Indiana Code section 6-1.1-25-4.5 ("the 4.5 Notice"), which notice included the components of the redemption amount. McIntosh did not redeem the Property, and, in July of 2018, Pinch-N-Post petitioned for the issuance of a tax deed to the Property. Following a hearing, the trial court denied Pinch-N-Post's petition on the basis that its 4.5 Notice had greatly overstated the amount McIntosh would have to pay to redeem the Property. The trial court also ordered that Pinch-N-Post be refunded the amount that its winning bid exceeded McIntosh's tax obligation. Pinch-N-Post claims that the trial court's finding that the 4.5 Notice inflated the redemption amount is clearly erroneous and that the trial court erred in refusing to refund all of the purchase money or, alternatively, ordering a new redemption period. Because we agree with McIntosh that the 4.5 Notice would have led a reasonable person to conclude that the total redemption amount was far greater than it actually was, we affirm that portion of the trial court's order. However, we agree with Pinch-N-Post that the trial court should have ordered a new redemption period. Consequently, we affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

[2]     As of March of 2018, McIntosh owned a house at 127 East Ewing Avenue in South Bend and had become delinquent on its property taxes. On March 9, 2018, after being the high bidder at a tax sale, Rose purchased a tax-sale certificate for the Property from the Board of Commissioners of St. Joseph County for $8752.00, a certificate Rose assigned to Pinch-N-Post. On March 28, 2018, Pinch-N-Post sent the 4.5 Notice to McIntosh, which included a table purporting to detail the sums of money required for redemption of the Property:

7.     The total amount of money required to redeem the property equals the sum of the amount […] set forth below:

| | |
|---|---|
| a. Judgment amount due at time of tax sale | $4,072.71 |
| b. PLUS 10% of item 7(a) if redeemed within 120 days of the date of the tax sale | $407.27 |
| c. PLUS the amount by which the purchase price, (the final bid amount at the tax sale EXCEEDED Item 7(a)— (This is commonly known as the overbid/surplus.) | $4,679.29 |
| d. PLUS 10% per annum on Item 7(c) added per diem | $467.93 |
| e. PLUS additional taxes and/or assessments paid by the purchaser subsequent to the sale. | $** |
| f. PLUS 10% per annum on Item 7(e) to date added per diem | $** |

| | |
|---|---|
| g. PLUS additional expenses incurred by purchaser recoverable under I.C. 6-1.1-25-4.5 and the costs of a title search or of examining and updating the abstract of title for the tract or item of real property | $111.94 |
| h. REDUCED by any amounts held in the name of the taxpayer or the purchaser in the tax sale surplus fund Item 7(c) | $** |
| i. TOTAL needed to redeem the parcel: **Contact County Auditor for daily total** | $** |

**If asterisks are shown in a box above, then call the County Auditor for the amount.

Appellant's App. Vol. II pp. 9–10. McIntosh did not redeem the Property by the deadline of July 9, 2018.

[3] On July 10, 2018, Pinch-N-Post petitioned for a tax deed for the Property. On December 6, 2018, the trial court conducted a hearing on Pinch-N-Post's petition. On January 3, 2019, the trial court denied Pinch-N-Post's petition for a tax deed to the Property. The trial court found that the 4.5 Notice "contained flawed numbers which greatly inflated the amount of money it would take for [McIntosh] to redeem the property" and concluded that it therefore did not substantially comply with the applicable statutory provisions. Appellant's App. Vol. 2 p. 45. The trial court also awarded Pinch-N-Post a refund of $4679.29, which represented the tax-sale surplus.

# Discussion and Decision

[4] Here, the trial court entered special findings and conclusions according to Indiana Trial Rule 52(A).

> In such cases our standard of review is two-tiered. We first determine whether the evidence supports the findings and then whether the findings support the judgment. Courts of appeal shall not set aside the findings or judgment unless clearly erroneous. In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and any legitimate inferences therefrom.

*Marion Cty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 216–17 (Ind. 2012) (citations and quotation marks omitted).

[5] The Indiana Supreme Court has summarized the procedure by which a delinquent property-tax liability may be satisfied through the forced sale of the property and through which the purchaser ultimately receives a tax deed:

> A purchaser of Indiana real property that is sold for delinquent taxes initially receives a certificate of sale. A [120-day[1]] redemption period ensues. If the owners fail to redeem the property during that [period], a purchaser who has complied with

---

[1] In this case, all agree that the redemption period was 120 days (rather than the default period of one year), apparently pursuant to Indiana Code subsection 6-1.1-25-4(c), which provides that

> (c) The period for redemption of real property:
>      (1) on which the county executive acquires a lien under IC 6-1.1-24-6; and
>      (2) for which the certificate of sale is sold under IC 6-1.1-24;
> is one hundred twenty (120) days after the date of sale of the certificate of sale under IC 6-1.1-24.

the statutory requirements is entitled to a tax deed. The property owner and any person with a "substantial property interest of public record" must each be given two notices.

The [4.5] notice announces the fact of the sale, the date the redemption period will expire, and the date on or after which a tax deed petition will be filed.

*Tax Certificate Invs., Inc. v. Smethers*, 714 N.E.2d 131, 133 (Ind. 1999) (citations omitted).

[6] Another feature of the tax-sale process is the "tax sale surplus fund" ("the Surplus Fund"), into which funds are deposited following a sale where the winning bid exceeds the then-current tax obligations:

(a) When real property is sold under this chapter, the purchaser at the sale shall immediately pay the amount of the bid to the county treasurer. The county treasurer shall apply the payment in the following manner:

(1) First, to the taxes, special assessments, penalties, and costs described in section 5(e) of this chapter.

(2) Second, to other delinquent property taxes in the manner provided in IC 6-1.1-23-5(b).

(3) Third, to a separate "tax sale surplus fund".

(b) For any tract or item of real property for which a tax sale certificate is sold under this chapter, if taxes or special assessments, or both, become due on the tract or item of real property during the period of redemption specified under IC 6-1.1-25-4, the county treasurer may pay the taxes or special assessments, or both, on the tract or item of real property from the tax sale surplus held in the name of the taxpayer, if any, after the taxes or special assessments become due.

(c) The:

(1) owner of record of the real property at the time the real property was certified for sale under this chapter and before the issuance of a tax deed; or

(2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property;

may file a verified claim for money which is deposited in the tax sale surplus fund. If the claim is approved by the county auditor and the county treasurer, the county auditor shall issue a warrant to the claimant for the amount due.

Ind. Code § 6-1.1-24-7.

[7] To summarize, the sale proceeds first satisfy the property tax obligation for the property, then satisfy certain other qualifying tax obligations of the property owner, with any surplus going into the Surplus Fund. In other words, the Surplus Fund is comprised of the overbid. The Surplus Fund may also be used to satisfy taxes or assessments that become due during the redemption period. Finally, if the property is redeemed, the tax-sale purchaser has a claim on whatever is in the Surplus Fund, and, if a tax deed is issued, the original owner does.

## I. Whether the Trial Court Erred in Denying Pinch-N-Post's Petition for a Tax Deed

[8] We first determine whether Pinch-N-Post's 4.5 Notice to McIntosh of the tax sale of the Property substantially complied with the relevant statutory authority. Pinch-N-Post challenges the trial court's finding that the 4.5 Notice did not substantially comply, arguing that it did not exaggerate the redemption amount at all, much less greatly. McIntosh counters that the 4.5 Notice contained several errors and did, in fact, inflate the redemption amount.

[9]     In a tax-sale case, the purchaser

> must provide notice "reasonably calculated, under all the
> circumstances, to apprise interested parties of the pendency of the
> action" before taking an action that will affect a protected property
> interest. [*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795
> (1983)]. Notice is constitutionally adequate when "the
> practicalities and peculiarities of the case … are reasonably met."
> *Smith v. Breeding* (1992), Ind. App., 586 N.E.2d 932, 936 (quoting
> [*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15
> (1950))].
>
> So, while all "essential acts" concerning the tax sale must be
> properly performed, *Smith v. Swisher* (1941), 109 Ind. App. 654,
> 659, 36 N.E.2d 945, 947, substantial compliance with the statutory
> procedures will satisfy the due process requirements. *See Smith v.
> Breeding*, 586 N.E.2d at 935 (noting a long line of Indiana cases in
> which failure to comply "substantially" with statutes governing tax
> sales and the steps leading up to them rendered the tax deeds
> void).

*Anton v. Davis*, 656 N.E.2d 1180, 1183 (Ind. Ct. App. 1995), *trans. denied*.

[10]    A 4.5 Notice is required to include, *inter alia*, "[t]he components of the amount required to redeem" the Property, Ind. Code § 6-1.1-25-4.5(e)(7), components that are detailed in Indiana Code subsection 6-1.1-24-6.1(b):

> (b) […] The notice must:
>
> [….]
>
>> (4) include a statement that a person redeeming each tract or
>> item of real property after the sale of the certificate must pay:
>>
>>> (A) the amount of the minimum bid under section 5 of this
>>> chapter for which the tract or item of real property was last
>>> offered for sale;
>>>
>>> (B) ten percent (10%) of the amount for which the certificate
>>> is sold;

(C) the attorney's fees and costs of giving notice under IC 6-1.1-25-4.5;

(D) the costs of a title search or of examining and updating the abstract of title for the tract or item of real property;

(E) all taxes and special assessments on the tract or item of real property paid by the purchaser after the sale of the certificate plus interest at the rate of ten percent (10%) per annum on the amount of taxes and special assessments paid by the purchaser on the redeemed property; and

(F) all costs of sale, advertising costs, and other expenses of the county directly attributable to the sale of certificates of sale; and

(5) include a statement that, if the certificate is sold for an amount more than the minimum bid under section 5 of this chapter for which the tract or item of real property was last offered for sale and the property is not redeemed, the owner of record of the tract or item of real property who is divested of ownership at the time the tax deed is issued may have a right to the tax sale surplus.

[11] We agree with McIntosh that the 4.5 Notice failed to substantially comply with the relevant statutes. Put simply, the 4.5 Notice explicitly listed the $4679.29 overbid as a component of the redemption amount—which is simply not true—an inclusion likely to create the false impression that the cost of redemption was far higher than it actually was. It is difficult to escape the conclusion that this was the whole point, as there is nothing anywhere in the relevant statutes that even remotely justifies including the overbid in the redemption amount.

[12] That said, Pinch-N-Post argues that item 7(h) essentially cures this misleading inclusion. As mentioned, item 7(h) states that the total redemption amount was to be reduced by any amount "held in the name of the taxpayer or the

purchaser in the tax sale surplus fund[,]" Appellant's App. Vol. II p. 10, which is a long-winded and unnecessarily confusing way of saying that you add the overbid before subtracting it. The 4.5 Notice, however, made no attempt to explain what a Surplus Fund is or that it contained the overbid, nor did it include a citation to Indiana Code section 6-1.1-24-7 (the statute that creates the Surplus Fund) despite including several other statutory citations elsewhere. Under the circumstances, we are unconvinced that item 7(h) went far enough to clear up the highly misleading inclusion of the overbid in the redemption amount.

[13]   In the end, we believe that the 4.5 Notice asked McIntosh to jump through too many hoops to discover the true redemption amount, a situation that only existed because Pinch-N-Post—misleadingly and without justification—included the overbid in the first place. When we consider "the practicalities and peculiarities" of a tax-sale case, *Mullane*, 339 U.S. at 314, we conclude that a 4.5 Notice that is very likely to leave a reasonable person with the false and misleading impression that the redemption amount includes the overbid does not substantially comply with the notice requirements of Indiana Code subsection 6-1.1-24-6.1(b).[2] *See Peterson v. Warner*, 478 N.E.2d 692, 695 (Ind.

---

[2] McIntosh also argues that the 4.5 Notice erroneously failed to include 10% of the sale price as one of the components of redemption. Pinch-N-Post concedes that its 4.5 Notice did not include a line-item specifically designated as 10% of the sale price of $8752.00, or $875.20. Pinch-N-Post notes, however, that because the sale price consists of the tax liability plus the overbid, item 7(b) (10% of the tax obligation) added to item 7(d) (10% of the overbid) comes to 10% of the sale price. So, 10% of the sale price *was* included in the 4.5 Notice, just broken into two amounts. McIntosh suffered no prejudice from all of this, however, because it did not result in any overstatement of the redemption amount.

Ct. App. 1985) (concluding that tax deed was invalid where purchaser sent notice of tax sale (when notice of redemption was appropriate), stating that "not only was the notice improper in form but it also contained substantially misleading information concerning facts crucial to [the owner]").

[14] Pinch-N-Post relies on *Hall v. Terry*, 837 N.E.2d 1095 (Ind. Ct. App. 2005), a case that is easily distinguished. The *Hall* Court concluded that, while Indiana Code section 6-1.1-25-4.5(e)(7) requires a 4.5 Notice to list the components required to redeem a property, it does not require the exact amounts of those components. *Id*. at 1099. Listing the correct components without amounts is not what Pinch-N-Post did, however; it listed at least one additional, *incorrect* component, which had the effect of convincing McIntosh that the redemption cost for the Property was far higher than it actually was. Pinch-N-Post's reliance on *Hall* is unavailing, and it has failed to convince us that the trial court's ruling in this regard is clearly erroneous.

## II. Whether the Trial Court's Order to Return the Overbid to Pinch-N-Post Was Clearly Erroneous

[15] Pinch-N-Post also contends that the trial court erred in refunding to it the amount of its overbid and in apparently voiding the underlying tax sale. To resolve this issue, we look to the statutory provisions governing a failure to provide an adequate 4.5 Notice.

> The goal of statutory interpretation is to discern and further the intent of the legislature. *Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016). "[W]e do not presume that the [l]egislature intended language used in a statute to be applied illogically or to bring

about an unjust or absurd result." *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (internal quotation omitted). In interpreting a statute, we consider the structure of the statute as a whole and "avoid interpretations that depend on selective reading of words that lead to irrational and disharmonizing results." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195–96 (Ind. 2016). The "best evidence" of the legislature's intent is the statute's language, and, if that language is clear and unambiguous, we simply apply the statute's plain and ordinary meaning, heeding both what it "does say" and what it "does not say." *Day*, 57 N.E.3d at 812 (citation omitted).

*Doe 1 v. Boone Cty. Prosecutor*, 85 N.E.3d 902, 908 (Ind. Ct. App. 2017). "If a statute is ambiguous, however, we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent." *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind. 2001).

[16] Indiana Code section 6-1.1-25-4.6 governs petitions for the issuance of tax deeds and describes the consequences of certain failures by the tax-deed petitioner at various points in the process, including the failure to provide adequate 4.5 Notice:

> (h) Except as provided in subsections (i) and (j), if:
>
> > (1) the verified petition referred to in subsection (a) is timely filed; and
> >
> > (2) the court refuses to enter an order directing the county auditor to execute and deliver the tax deed because of the failure of the petitioner under subsection (a) to fulfill the notice requirement of subsection (a);
>
> the court shall order the return of the amount, if any, by which the purchase price exceeds the minimum bid on the property under IC 6-1.1-24-5 minus a penalty of twenty-five percent (25%) of that excess. The petitioner is prohibited from participating in any

manner in the next succeeding tax sale in the county under IC 6-1.1-24. The county auditor shall deposit penalties paid under this subsection in the county general fund.

(i) Notwithstanding subsection (h), in all cases in which:

> (1) the verified petition referred to in subsection (a) is timely filed;

> (2) the petitioner under subsection (a) has made a bona fide attempt to comply with the statutory requirements under subsection (f) for the issuance of the tax deed but has failed to comply with these requirements;

> (3) the court refuses to enter an order directing the county auditor to execute and deliver the tax deed because of the failure to comply with these requirements; and

> (4) the purchaser, the purchaser's successors or assignees, or the purchaser of the certificate of sale under IC 6-1.1-24 files a claim with the county auditor for refund not later than thirty (30) days after the entry of the order of the court refusing to direct the county auditor to execute and deliver the tax deed;

the county auditor shall not execute the deed but shall refund the purchase money minus a penalty of twenty-five percent (25%) of the purchase money from the county treasury to the purchaser, the purchaser's successors or assignees, or the purchaser of the certificate of sale under IC 6-1.1-24. The county auditor shall deposit penalties paid under this subsection in the county general fund. All the delinquent taxes and special assessments shall then be reinstated and recharged to the tax duplicate and collected in the same manner as if the property had not been offered for sale. The tract or item of real property, if it is then eligible for sale under IC 6-1.1-24, shall be placed on the delinquent list as an initial offering under IC 6-1.1-24.

(j) Notwithstanding subsections (h) and (i), the court shall not order the return of the purchase price or any part of the purchase price if:

> (1) the purchaser or the purchaser of the certificate of sale
> under IC 6-1.1-24 has failed to provide notice or has provided
> insufficient notice as required by section 4.5 of this chapter;
> and
>
> (2) the sale is otherwise valid.

[17]    Subsections (h) and (i) describe the consequences to a tax-sale purchaser if the purchaser fails to give proper notice of its petition for a tax deed or if the petitioner makes a bona fide attempt to comply with the statutory requirements of Indiana Code subsection 6-1.1-25-4.6(f)[3] but fails, respectively. There is no indication that either of those failures occurred in this case. Of interest to us is subsection (j), which concerns the consequences for noncompliance with the provisions of Indiana Code section 6-1.1-25-4.5. The one point on which subsection (j) is clear is that there is to be no refund of purchase money to the petitioner. We conclude, then, that the trial court erred in ordering the return

---

[3] Indiana Code subsection 6-1.1-25-4.6(f) provides as follows:

> (f) Not later than sixty-one (61) days after the petition is filed under subsection (a), the court shall enter an order directing the county auditor (on the production of the certificate of sale and a copy of the order) to issue to the petitioner a tax deed if the court finds that the following conditions exist:
> (1) The time of redemption has expired.
> (2) The tract or item of real property has not been redeemed from the sale before the expiration of the period of redemption specified in section 4 of this chapter.
> (3) Except with respect to a petition for the issuance of a tax deed under a sale of the certificate of sale on the property under IC 6-1.1-24-6.1 or IC 6-1.1-24-6.8, or with respect to penalties described in section 4(j) of this chapter, all taxes and special assessments, penalties, and costs have been paid.
> (4) The notices required by this section and section 4.5 of this chapter have been given.
> (5) The petitioner has complied with all the provisions of law entitling the petitioner to a deed.
> The county auditor shall execute deeds issued under this subsection in the name of the state under the county auditor's name. If a certificate of sale is lost before the execution of a deed, the county auditor shall issue a replacement certificate if the county auditor is satisfied that the original certificate existed.

of the overbid to Pinch-N-Post.[4]  That said, subsection (j) does not explicitly explain what is to be done with the purchase money or if the tax-sale certificate remains valid.  As mentioned, if a statute is ambiguous we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent.  *See, e.g.*, *Elmer Buchta Trucking*, 744 N.E.2d at 942.  We believe that subsection (j), read in conjunction with the rest of Indiana Code section 6-1.1-25-4.6 and Indiana Code article 6-1.1, provides us with sufficient guidance to discern the General Assembly's intent.

[18]   When the General Assembly has wanted to penalize certain failures by purchasers in the tax-sale context, it has explicitly done so.  Indiana Code subsections 6-1.1-25-4.6(h) and -4.6(i) both impose a penalty to be deposited in the county general fund.  In addition, Indiana Code section 6-1.1-24-8 imposes a 25% civil penalty on any purchaser at a tax sale who fails to pay the bid, also to be deposited in the county general fund when collected.  In contrast, Indiana Code subsection 6-1.1-25-4.6(j) contains no penalty provision, and it is as important to consider what the General Assembly does *not* say as what it does.  *See Day*, 57 N.E.3d at 812.  Given the explicit penalties imposed for other failures, it follows that the General Assembly did not intend the failure of a 4.5

---

[4] Having established that the trial court erred in ordering any purchase money to Pinch-N-Post, we need not address its claim that the trial court's order unjustly enriched McIntosh.  We feel, however, that it is necessary to briefly address the notion that the trial court could have ordered the purchase money that was not refunded to retire McIntosh's tax obligation, which both parties seem to assume was the case.  While the trial court's order is unclear on this point, we observe that no statute would even remotely authorize using the purchase money to retire McIntosh's tax obligation unless a tax deed is issued.  To the extent that the St. Joseph County Treasurer (or the trial court) may have understood the trial court's order as one to use the purchase money to retire McIntosh's tax obligation, that was in error.

Notice to result in, effectively, a 100% penalty to be paid into the county general fund. If the purchase money is to be neither returned nor surrendered as a penalty, the only other reasonable possibility is that it will continue to be held by the county treasurer.

[19] As for the validity of the tax sale, subsection (j) is again silent. Considering that subsection (i) contains provisions that explicitly void the tax sale, we will not assume that the subsection (j) does the same when it contains no such provisions. *See id*. Moreover, subsection (j)(2)'s requirement that the tax sale be otherwise valid would be superfluous if the statute voided the tax sale. We "will presume that the legislature did not enact a useless provision." *Robinson v. Wroblewski*, 704 N.E.2d 467, 475 (Ind. 1998). We believe that the most reasonable interpretation of subsection (j) is that the General Assembly intended to leave underlying tax sales intact in cases where the only problem is that the 4.5 Notice was inadequate. Consequently, the trial court erred in apparently voiding the underlying tax sale of the Property.

[20] We are left only with the question of what is to happen going forward. To recap, the St. Joseph County Treasurer holds Pinch-N-Post's purchase money, and Pinch-N-Post holds a valid tax-sale certificate, which is precisely the positions those entities occupied directly after the issuance of the tax-sale certificate. In other words, the General Assembly has returned the parties and the county to the beginning of the 120-day redemption period. The only reasonable conclusion to be drawn is that the General Assembly intended the consequence of an inadequate 4.5 Notice to be a second chance for the owner

to redeem the property before a tax deed can be issued. As such, we remand with instructions to order a new 120-day redemption period, with 4.5 Notice to be given not later than ninety days after the order.[5]

[21] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Crone, J., concurs.

Tavitas, Judge concurs in part and dissents in part with opinion.

---

[5] Indiana Code section 6-1.1-25-4.5(c) provides that

> (c) A purchaser of a certificate of sale under IC 6-1.1-24-6.1 is entitled to a tax deed to the property for which the certificate was sold only if:
> [....]
> (3) not later than ninety (90) days after the date of sale of the certificate of sale under IC 6-1.1-24, the purchaser gives notice of the sale to:
>> (A) the owner of record at the time of the sale; and
>> (B) any person with a substantial property interest of public record in the tract or item of real property.

Because the redemption and 4.5 Notice periods begin running with the sale of the tax-sale certificate, which in this case occurred on March 9, 2018, strict application of this provision would mean that Pinch-N-Post could not possibly provide a timely 4.5 Notice to McIntosh. To avoid an unjust result, the trial court's order for a new redemption period shall also mark the beginning of the 4.5 Notice period.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pinch-N-Post, LLC,<br>*Appellant/Petitioner,*<br><br>*v.*<br><br>Verna McIntosh,<br>*Appellee/Respondent.* | Court of Appeals Case No.<br>19A-TP-239 |

**Tavitas, Judge, concurs in part and dissents in part with opinion.**

[22]  I respectfully concur in part and dissent in part.  I agree with the analysis of Section I that Pinch-N-Post failed to provide a proper 4.5 Notice.  I part ways, however, with the majority regarding the impact of the improper 4.5 Notice, which is discussed in Section II.

[23]  The rules of statutory interpretation require that "statutes concerning the same subject matter must be read together in an attempt to harmonize and give effect to each."  *Peoples State Bank v. Benton Twp. of Monroe Cty.*, 28 N.E.3d 317, 323 (Ind. Ct. App. 2015).  After applying these statutory rules of interpretation, I disagree with the majority's interpretation of Indiana Code Section 6-1.1-25-4.6, which is quoted in detail in the majority's opinion.

[24] "The tax sale process involves the issuance of three notices to the property owner." *In re 2007 Tax Sale in Lake Cty.*, 926 N.E.2d 524, 527 (Ind. Ct. App. 2010). The first required notice is the county auditor's notice of tax sale; the second is the notice of right of redemption, which is the 4.5 Notice issue here; and the third is the notice of filing a petition for tax deed. *See id.* at 527-529. Indiana Code Section 6-1.1-25-4.6 addresses the effect of the tax-deed petitioner's failure to follow the extensive statutory requirements to obtain a tax deed.

[25] The trial court here found that Pinch-N-Post's 4.5 Notice was inadequate where it overstated the redemption amount by "a magnitude of almost 50%." Appellant's App. Vol. II p. 46. The trial court then ordered the return of the tax sale surplus amount of $4,679.29 to Pinch-N-Post. The majority agrees that the 4.5 Notice was inadequate but allows Pinch-N-Post a second chance to send a proper 4.5 Notice. I conclude that, under Indiana Code Section 6-1.1-25-4.6(j), Pinch-N-Post is not entitled to such a second chance.

[26] Subsection (i) of Indiana Code Section 6-1.1-25-4.6 addresses instances in which the tax-deed petitioner has made a bona fide attempt to comply with the statutory requirements under subsection (f) for the issuance of the tax deed but has ultimately failed to comply with those requirements. Given the misleading and significantly overstated redemption amount in the 4.5 Notice here, I agree that subsection (i) is inapplicable because the 4.5 Notice was not a "bona fide" attempt to comply with the statutory requirements.

[27] I also agree that subsection (j), which applies when the notice provisions of 4.5 are not met and the "sale is otherwise valid" is applicable here. I.C. § 6-1.1-25-4.6(j). Where subsection (j) applies, "the court shall not order the return of the purchase price or any part of the purchase price . . . ." *Id.* Consequently, it is clear to me that Pinch-N-Post is not entitled to the return of any part of its purchase price. The majority, however, concludes that "the General Assembly did not intend the failure of a 4.5 Notice to result in, effectively, a 100% penalty to be paid into the county general fund." I believe that is exactly what subsection (j) requires.

[28] Without any relevant statutory support, the majority allows the tax-sale petitioner a second chance at providing a proper 4.5 Notice. Even where the tax-sale petitioner has made a bona fide effort at complying with the statutory requirements and obtains a refund of a portion of the purchase money, subsection (i) does not allow the tax-sale petitioner such a second chance. Rather, the tax sale is voided.

[29] The General Assembly recognized that the provision of a misleading 4.5 Notice warranted a significant penalty—the return of none of the purchase price. I see no reason why the tax sale would not be voided in this circumstance as well.

[30] I would affirm the trial court's judgment regarding the inadequacy of the 4.5 Notice; I would, however, reverse the trial court's award of the tax sale surplus to Pinch-N-Post and remand for the trial court to void the tax sale. For these reasons, I concur in part and dissent in part from the majority's decision.